# EXHIBIT "A"

## ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME, THE MINIMUM INTEREST RATE I MAY PAY, AND THE MAXIMUM INTEREST RATE I MUST PAY.**

$173,000.00                      Lufkin, Texas                      September 27, 2001

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, TOMMY EARL WELLS, JR. and wife, CHERYL LYNN WELLS promise to pay ONE HUNDRED SEVENTY THREE THOUSAND AND NO/100 ($173,000.00) DOLLARS (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HUNTINGTON STATE BANK. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of SIX (6.0%) percent per annum, which rate is based on a 360-day year. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay before any default described in Section 7(b) of this Note.

3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1st day of each month beginning on November 1, 2001. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on October 1, 2026, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at Huntington State Bank, P.O. Box 1090, Huntington, TX 75949, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of ONE THOUSAND ONE HUNDRED FOURTEEN AND 64/100 ($1,114.64) DOLLARS. This amount may change.

(C) Monthly payment changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the 1st day of October, 2002, and on that day every twelfth (12th) month thereafter. Each date on which my interest rate could change is called a "Change Date".

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the Prime Rate as hereinafter defined. The term "Prime Rate" as used herein shall mean the interest rate published, announced, established or posted by The Wall Street Journal as the "Prime Rate" of interest, which rate may not be the lowest charged by a Lender. The most recent Index figure available as of the date 25 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this change.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding ZERO (0.0%) percentage points to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth (0.125%) percentage point. Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than EIGHT (8.0%) percent per annum or less than FOUR (4.0%) percent per annum. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO (2.0%) percentage points from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than EIGHTEEN (18.0%) percent per annum. Notwithstanding anything contained herein seemingly to the contrary, my interest rate will never be less than FOUR (4.0%) percent per annum.

(E) Effective Date of Change

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.



6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of TEN (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the late charge will be FIVE (5.0%) per cent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

At the option of the Noteholder, the entire unpaid principal balance and accrued unpaid interest owing hereon shall at once become due and payable, without notice or demand, upon the occurrence at any time of any of the following events, which shall constitute a default hereunder:

(1) Default in the payment of any installment of principal and/or interest hereunder on the due date thereof.

(2) Default in the performance of any of the covenants or provisions of any deed of trust, security agreement, assignment, or any other agreement securing this Note which default is not corrected within fifteen (15) days after written notice thereof is delivered to me.

(3) If I or any guarantor hereof become insolvent; if I am, or any guarantor hereof, is generally not paying my and/or his, or her, debts as such debts become due; if a custodian or receiver is appointed for any of the property of myself, or any guarantor hereof; if a case is commenced by or against myself or any guarantor hereof under Title 11 of the United States Code, or under any other law relating to the insolvency, liquidation or reorganization of debtors.

If this Note is placed in the hands of an attorney for collection or if it is collected through any legal or court proceeding, I agree to pay all costs of collection including but not limited to, all court costs and reasonable attorney's fees.

Except as otherwise provided herein, I, and all other persons now or hereafter liable for the payment of this Note, whether as endorser, guarantor, surety, or otherwise, severally waive demand, presentment, notice of dishonor, diligence in collecting, grace, notice of protest, notice of acceleration of the maturity hereof, notice of intent to accelerate the maturity hereof, and all such parties consent to all extensions, whether one or more, which from time to time may be granted by the holder hereof and all partial payments hereon, whether before or after maturity.

If in the event of default and should the Noteholder waive any of its powers or rights arising under this Note, any deed of trust or any other related document, such waiver shall not be deemed to waive Noteholder's powers or rights on the latter occurrence or any reoccurrence of any such default. Delay by the holder in exercising any such powers or in claiming such right shall not be deemed a waiver of such power or right.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address below or at a different address if I give the Note Holder a notice of my different address.

-3-

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

I promise to the extent permitted by law to pay interest, payable on demand, on overdue principal and overdue interest from the due date thereof at the highest lawful contract rate.

This Note is secured for payment by a Vendor's Lien retained in that Deed of even date herewith from HUNTINGTON STATE BANK to the undersigned, and said Deed being filed for record in the office of the County Clerk of Nacogdoches County, Texas, and being further secured by a Deed of Trust of even date herewith to KENNETH W. MARSHALL, Trustee, and being filed for record in the office of the County Clerk of Nacogdoches County, Texas, both the Deed and the Deed of Trust being secured by that property described in the attached Exhibit "A", which Exhibit "A" is attached hereto, incorporated herein by reference and made a part hereof for all purposes the same as if copied herein verbatim.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
Tommy Earl Wells, Jr.

_____
Cheryl Lynn Wells

Property Address:

Rt. 10, Box 5198
Nacogdoches, TX 75965

-4-